<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| NATIONAL TRENCH SAFETY INC., <br><br> Plaintiff, <br><br> v. <br><br> US SHORING INC., and JUNIOR NEGRON, <br><br> Defendants. | Case No. 2:25-cv-07875 (BRM) (LDW) <br><br> **OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court are Defendant U.S. Shoring, Inc.'s ("U.S. Shoring") Motion to Dismiss (ECF No. 26) Count One of the Complaint (ECF No. 1) with prejudice and Defendant Heriberto Negron, Jr., i/p/a Junior Negron's ("Negron") Motion to Dismiss (ECF No. 25) Count Two of the Complaint with prejudice pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). Plaintiff National Trench Safety, Inc. ("NTS") filed oppositions (ECF Nos. 27, 28), and U.S. Shoring and Negron (collectively, "Defendants") filed replies (ECF Nos. 29, 30). This Court has jurisdiction pursuant to 42 U.S.C. § 1332(a). Having reviewed and considered the submissions filed in connection with the motions and having declined to hold oral argument pursuant to Rule 78(b), for the reasons set forth below and for good cause having been shown, U.S. Shoring's Motion to Dismiss Count One of the Complaint is **GRANTED IN PART** and **DENIED IN PART**, Negron's Motion to Dismiss Count Two of the Complaint is **DENIED**, and Negron's Motion to Dismiss the request for equitable relief pursuant to Rule 12(b)(6) is **DENIED AS PROCEDURALLY DEFICIENT**.

## I.    BACKGROUND

For purposes of the motions to dismiss, the Court accepts the factual allegations in the Complaint as true and draws all inferences in the light most favorable to NTS. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). The Court also considers any "document *integral to or explicitly relied* upon in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Digit. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).

### A.    Factual Background

NTS is incorporated in California with its principal place of business in Texas. (ECF No. 1 ¶ 6.) "NTS sells trench safety solutions to construction companies nationwide, including out of its New Jersey branch." (*Id.* ¶ 2.) U.S. Shoring is incorporated in and has its principal place of business in New Jersey. (*Id.* ¶ 6.) U.S. Shoring "sells trench safety solutions to construction companies across New Jersey and the tri-state area." (*Id.* ¶ 22.)

On March 4, 2021, NTS hired Negron as a Welder. (*Id.* ¶¶ 28, 32.) Negron was subsequently promoted to a Sales Representative and then to an Operations Manager. (*Id.* ¶¶ 28, 33.) As an Operations Manager, Negron was "was primarily responsible for selling safety solutions to customers and maintaining relationships with construction companies across New Jersey and the tri-state area." (*Id.* ¶ 2.)

In consideration of the promotion to Operations Manager, Negron entered into a new employment agreement on March 15, 2024 (the "Agreement"). (*Id.* ¶ 33; *accord id.*, Ex. A.) The Agreement includes a non-competition clause (the "Non-Compete Clause") under which Negron agreed not to compete against NTS in the "Trench Products Business."[1] (*Id.*, Ex. A at 1–2.) The

---

[1] The Agreement defines the term "Trench Products Business" as:

Agreement also includes non-solicitation clauses (the "Non-Solicitation Clauses") under which Negron agreed not to directly or indirectly contact or solicit an existing NTS customer, supplier, employee, or "other party with whom [NTS] does business." (*Id.*, Ex. A at 2.) Both the Non-Compete Clause and the Non-Solicitation Clauses are limited to the term of employment and a period of one year thereafter. (*Id.*, Ex. A at 1–2.)

On April 11, 2023, Gregory Galoppo ("Galoppo") voluntarily resigned from his employment at NTS to start a competing Trench Products Business, *i.e.*, U.S. Shoring. (*Id.* ¶¶ 3, 23.) Galoppo allegedly started U.S. Shoring with the assistance of ex-NTS executive Ted Constantino ("Constantino"). (*Id.* ¶¶ 24–26.) The Complaint suggests although Constantino's employment agreement included non-compete and non-solicitation clauses, Galoppo's agreement did not. (*See generally id.*)

On July 12, 2024, Negron voluntarily resigned from his employment at NTS to join U.S. Shoring as a Consultant. (*Id.* ¶¶ 28, 32, 40.) Between July 12, 2024, and July 12, 2025, Negron allegedly solicited both NTS employees and customers in violation of the Non-Compete Clause and Non-Solicitation Clauses. (*Id.* ¶¶ 40–55.) Specifically, the Complaint alleges Negron assisted in soliciting three NTS employees and a substantial number of his prior customers. (*Id.*) U.S.

---

> the business of the rental and sale of trench and traffic safety products, such as trench shields, aluminum hydraulic shoring, pipe lasers, piercing tools, confined space equipment, test plugs. road plates, slide rail systems, large excavation brace systems, beam and plate systems, tight sheeting, message boards, arrow boards, energy absorption products, signs, truck mounted attenuators, barricades, cones, paint striping equipment, sign posts, beads, buttons and virtually all related trench and traffic safety items, and/or any other trench related products . . . .

(ECF No. 1, Ex. A.)

Shoring and Negron allegedly solicited a number of prior customers while "pretend[ing] to still be employed with NTS." (*See, e.g.*, *id.* ¶ 49.)

### B.     Procedural History

On June 6, 2025, NTS filed the Complaint against U.S. Shoring and Negron. (*Id.*) The Complaint alleges two causes of action: a tortious interference claim against U.S. Shoring (Count One) (*see id.* ¶¶ 56–63); and a breach of contract claim against Negron (Count Two) (*see id.* ¶¶ 64–73).

On August 4, 2025, U.S. Shoring filed a request for a pre-motion conference pursuant to the Court's judicial preferences. (ECF No. 15.) On August 5, 2025, U.S. Shoring filed a motion to dismiss (ECF No. 19), which the Court administratively terminated. (ECF No. 20). NTS filed a response to the request for a pre-motion conference on August 15, 2025. (ECF No. 23.) On August 25, 2025, the Court determined a pre-motion conference would not be beneficial and ordered the parties to proceed with motion practice. (ECF No. 24.)

On August 27, 2025, U.S. Shoring moved to dismiss Count One (ECF No. 26), and Negron moved to dismiss Count Two (ECF No. 25). NTS filed oppositions on September 22, 2025 (ECF Nos. 27, 28), and U.S. Shoring and Negron filed replies on September 29, 2025 (ECF Nos. 29, 30).

## II.     LEGAL STANDARD

In deciding a motion to dismiss pursuant to Rule 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [the non-moving party]." *Phillips*, 515 F.3d at 228. "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). However, "a plaintiff's obligation to provide the

'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957); and then quoting Fed. R. Civ. P. 8(a)(2)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). This "plausibility standard" requires the complaint to allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). "[D]etailed factual allegations" are not required, but "more than an unadorned, the-defendant-unlawfully-harmed-me accusation" must be pled; it must include "factual enhancement" and not just conclusory statements or a "recitation of the elements of a cause of action." *Id.* (quoting *Twombly*, 550 U.S. at 555, 557). In assessing plausibility, the court may not consider any "[f]actual claims and assertions raised by a defendant." *Doe v. Princeton Univ.*, 30 F.4th 335, 345 (3d Cir. 2022).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer

more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). Indeed, after *Iqbal*, conclusory or "bare-bones" allegations will no longer survive a motion to dismiss: "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555). To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show the claim is facially plausible, allowing "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556, 570). The Supreme Court's ruling in *Iqbal* emphasizes a plaintiff must show the allegations of his or her complaints are plausible. *See id.* at 670.

While, generally, the court may not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to Rule 12(b)(6), the Third Circuit has held "a court may consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment pursuant to Rule 56]." *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider any "document *integral to or explicitly relied* upon in the complaint." *In re Burlington Coat Factory*, 114 F.3d at 1426 (quoting *Shaw*, 82 F.3d at 1220). However, "[w]hen the truth of facts in an 'integral' document are contested by the well-pleaded facts of a complaint, the facts in the complaint must prevail." *Princeton Univ.*, 30 F.4th at 342.

### III.   DECISION

U.S. Shoring moves to dismiss the tortious interference claim, and Negron moves to dismiss the breach of contract claim, with prejudice pursuant to Rule 12(b)(6).[2] (ECF Nos. 25, 26.) In support of their respective motions, Defendants both claim the Complaint fails to demonstrate a valid contract exists between NTS and Negron under New Jersey law.[3] (ECF No. 25 at 7–11; ECF No. 26-1 at 7–8.) In response, NTS argues the Complaint sufficiently states a tortious interference claim against U.S. Shoring (see ECF No. 28 at 10–25) and a breach of contract claim against Negron (see ECF No. 27 at 8–16). Alternatively, Negron requests leave to amend the Complaint. (Id. at 21; ECF No. 28 at 25.) The Court addresses each motion in turn.

### A.   **Breach of Contract (Negron)**

To state a claim for breach of contract in New Jersey, a plaintiff must state sufficient facts demonstrating both a valid contract exists, and the defendant violated provisions of same. *See Abira Med. Lab'ys, LLC v. Nat'l Ass'n of Letter Carriers Health Benefit Plan*, Civ. A. No. 23-

---

[2] Negron also moves to dismiss the Complaint's request for equitable relief pursuant to Rule 12(b)(6). (ECF No. 25 at 13.) However, "Rule 12(b)(6) is not the appropriate vehicle by which to dismiss a request for [equitable relief] because a prayer for relief 'is not itself a part of the plaintiff's claim.'" *Wells Fargo Bank, N.A. v. Windows USA, LLC*, Civ. A. No. 19-161, 2019 WL 7758600, at *2 (S.D. Iowa Dec. 17, 2019) (quoting *AG Spectrum Co. v. Elder*, 181 F. Supp. 3d 615, 617 (S.D. Iowa 2016)); *accord Atlantis Car Care, Inc. v. Phoenix Ins. Co.*, Civ. A. No. 19-524, 2019 WL 3892867, at *1 n.1 (W.D. Okla. Aug. 19, 2019); *Aurora Co-op Elevator Co. v. Aventine Renewable Energy-Aurora W., LLC*, Civ. A. No. 12-230, 2014 WL 5610588, at *2–3 (D. Neb. Nov. 4, 2014). Accordingly, Negron's Motion to Dismiss the request for equitable relief pursuant to Rule 12(b)(6) is **DENIED AS PROCEDURALLY DEFICIENT**.

[3] A federal court sitting in diversity must typically conduct a choice-of-law analysis to determine which state's law applies; however, the parties do not dispute New Jersey law should govern all claims in this case. (*See generally* ECF Nos. 25, 26-1, 27, 28.) Accordingly, the Court will apply New Jersey law. *See UBI Telecom Inc. v. KDDI Am., Inc.*, Civ. A. No. 13-1643, 2014 WL 2965705, at *9 (D.N.J. June 30, 2014) (holding "[w]hen the parties agree upon which state's law applies . . . the Court need not conduct [a] choice-of-law inquiry"); *see also Butera v. Honeywell*, Civ. A. No. 18-13417, 2020 WL 64568, at *2 (D.N.J. Jan. 6, 2020); *Cole v. NIBCO, Inc.*, Civ. A. No. 13-7871, 2015 WL 2414740, at *5 (D.N.J. May 20, 2015).

5142, 2024 WL 1928680, at *2 (D.N.J. Apr. 30, 2024); *see also Etrailer Corp. v. Unbeatablesale.com, Inc.*, Civ. A. No. 21-10172, 2024 WL 1016200, at *4 (D.N.J. Mar. 8, 2024) ("[A] complaint's reference to an agreement and allegation of its breach is insufficient to survive dismissal because those claims are 'legal conclusion[s]' properly disregarded on a Rule 12(b)(6) motion." (internal quotation marks omitted)); *Coda v. Constellation Energy Power Choice, LLC*, 409 F. Supp. 3d 296, 303 (D.N.J. 2019) (requiring a plaintiff to specifically identify the provisions of the contract the defendant allegedly violated). To plead a valid contract exists, a plaintiff is required to allege: "(1) a meeting of the minds; (2) an offer and acceptance; (3) consideration; and (4) reasonably certain contract terms." *Gant v. Ragone*, Civ. A. No. 20-1727, 2020 WL 6797125, at *2 (D.N.J. Nov. 19, 2020).

Here, Negron limits his motion to the argument the Non-Compete Clause and Non-Solicitation Clause are invalid as a matter of law as the clauses are overbroad.[4] (*See* ECF No. 25 at 7–11.) Negron does not argue the Complaint fails to state sufficient facts demonstrating either a valid contract exists or he violated provisions of same. (*See generally id.*) Notably, he does not

---

[4] Defendants also argue the Non-Compete Clause or the Non-Solicitation Clauses are invalid under the "totality of the circumstances" test. (*See* ECF No. 25 at 11–13 (citing *Coventry v. U.S. Steel Corp.*, 856 F.2d 514, 524 (3d Cir. 1988); *Swarts v. Sherwin–Williams Co.*, 581 A.2d 1328, 1332 (N.J. Super. Ct. App. Div. 1990)); *accord* ECF No. 26-1 at 7–8.) Specifically, Defendants claim the record demonstrates Negron neither knowingly nor voluntarily assented to the terms of the clauses based on his limited education, his limited opportunity to review the terms prior to signing, and NTS's failure to encourage him to consult with an attorney prior to signing. (*See* ECF No. 25 at 11–13; *accord* ECF No. 26-1 at 7–8.) However, Defendants fail to cite any authority in support of the argument the "totality of the circumstances" test applies to contracts generally. (*See generally* ECF Nos. 25, 26-1, 29, 30.) At this time, both the Third Circuit and the New Jersey courts have limited the application of the "totality of the circumstances" test to settlement and release agreements only. *See Geraghty v. Ins. Servs. Off., Inc.*, 369 F. App'x 402, 405–06 (3d Cir. 2010) ("This Court uses a totality of the circumstances test when considering the validity of a release agreement."); *see also Grohs v. Lanigan*, Civ. A. No. 16-7083, 2024 WL 4850750, at *3 (D.N.J. Nov. 21, 2024) ("[D]ifferent rules govern . . . review of cases in which a person allegedly waives civil rights claims." (quoting *W.B. v. Matula*, 67 F.3d 484, 497 (3d Cir. 1995))).

claim he did not read, understand, or assent to the provisions of the Agreement. (*See id.* at 3–4 (stating Negron personally executed the Agreement on March 15, 2024)); *see also Howmedica Osteonics Corp. v. Howard*, Civ. A. No. 19-19254, 2022 WL 16362464, at *12 (D.N.J. Oct. 28, 2022) ("[S]igning a contract creates a conclusive presumption that the signer read, understood, and assented to its terms." (quoting *Raiczyk v. Ocean Cnty. Veterinary Hosp.*, 377 F.3d 266, 270 (3d Cir. 2004))); *N.J. Mfrs. Ins. Co. v. Sunrun Inc.*, Civ. A. No. 24-6441, 2024 WL 5002922, at *5 (D.N.J. Dec. 6, 2024) ("It is a fundamental tenant of contract law that one who signs an agreement understands its contents."). Nor does he claim the Agreement is invalid under a typical contract defense, such as fraud, duress, coercion, mistake, or unconscionability. *See Ragsdale v. Lora*, Civ. A. No. 20-16123, 2021 WL 4099785, at *4 (D.N.J. Sept. 9, 2021).

"New Jersey courts have enforced reasonable restrictive covenants against post-employment competition for over one-hundred years." *Howmedica Osteonics*, 2022 WL 16362464, at *8. To determine whether a covenant is reasonable and, therefore, enforceable, New Jersey courts apply a three-part test. *See id.* (citing *Solari Indus., Inc. v. Malady*, 264 A.2d 53, 61 (N.J. 1970). "Depending upon the results of that [test], the restrictive covenant may be [invalidated] or given complete or partial enforcement to the extent reasonable under the circumstances." *Sunbelt Rentals, Inc.*, Civ. A. No. 20-17611, 2021 WL 82370, at *14 (D.N.J. Jan. 11, 2021) (citing *Cmty. Hosp. Grp., Inc. v. More*, 869 A.2d 884, 897 (N.J. 2005)).

First, the Court determines "whether the restrictive covenant is necessary to protect the employer's legitimate interests in enforcement." *Howmedica Osteonics*, 2022 WL 16362464, at *8 (internal quotation marks omitted) (quoting *Solari Indus.*, 264 A.2d at 61). If the restrictive covenant is not necessary to protect an employer's legitimate interests, then the covenant is unreasonable and may be invalidated. *See Newport Cap. Grp., LLC v. Loehwing*, Civ. A. No. 11-

9

2755, 2013 WL 1314737, at *6 (D.N.J. Mar. 28, 2013) (citing *Ingersoll-Rand Co. v. Ciavatta*, 542 A.2d 879, 887–88 (N.J. 1988)). However, if the covenant is necessary to protect a legitimate interest, then the covenant should not be invalidated but rather should be "enforce[ed] to the extent reasonable under the circumstances." *Sunbelt Rentals*, 2021 WL 82370, at *14.

This rule, known as partial enforcement and blue penciling, "favors granting that limited measure of relief within the terms of the noncompetitive agreement." *ADP, LLC v. Rafferty*, 923 F.3d 113, 120 (3d Cir. 2019) (internal quotation marks omitted) (quoting *Solari Indus.*, 264 A.2d at 61); *see also ADP, Inc. v. Appleman*, Civ. A. No. 24-10967, 2025 WL 2356082, at *3 (D.N.J. Aug. 14, 2025) ("New Jersey has evolved from invalidating overbroad restrictive covenants outright to presumptively compress[ing] or reduc[ing] their scope so as to render the covenants reasonable." (alterations in original) (internal quotation marks omitted)). A restrictive covenant "may be limited in its application concerning its geographical area, its period of enforceability, and its scope of activity." *Rafferty*, 923 F.3d at 126 (quoting *Coskey's Television & Radio Sales & Serv., Inc. v. Foti*, 602 A.2d 789, 793 (N.J. Super. Ct. App. Div. 1992)). "To determine whether and to what extent the [restrictive covenant] must be blue penciled," the court must balance the employer's legitimate interest against the employee's undue hardship and the public interest. *See id.* at 121–27; *see also Pittman*, 2019 WL 5304148, at *10 (noting the employee's undue hardship and public interest factors "rarely favor the complete nullification of a restrictive covenant"); *ADP, LLC v. Pittman*, Civ. A. No. 19-16237, 2019 WL 5304148, at *10 (D.N.J. Oct. 18, 2019) (stating the three-part test will "rarely justify[] the total invalidation of a restrictive covenant"). "At the pleadings stage, a court rarely knows enough about the substance of this balancing act to make a judgment as to whether the covenant is reasonable." *Victaulic Co. v. Tieman*, 499 F.3d 227, 238 (3d Cir. 2007), *as amended* (Nov. 20, 2007); *accord CrossCountry Mortg., Inc. v. Am.*

10

*Neighborhood Mortg. Acceptance Co., LLC*, Civ. A. No. 22-1119, 2023 WL 2158930, at \*5 (D.N.J. Feb. 22, 2023).

Here, the Complaint alleges the Non-Compete Clause and Non-Solicitation Clauses protect NTS's interest in its customer relationships and goodwill. (ECF No. 1 ¶¶ 1–4, 38, 40–46, 68–70; *accord id.*, Ex. A.) "New Jersey courts have recognized that protecting customer relationships and goodwill are legitimate business interests." *Howmedica Osteonics*, 2022 WL 16362464, at \*9; *see also Rafferty*, 923 F.3d at 121 (recognizing employers have a "patently legitimate" interest in protecting their customer relationships (quoting *Whitmyer Bros., Inc. v. Doyle*, 274 A.2d 577, 581 (N.J. 1971))). Therefore, the Court determines the Non-Compete Clause and Non-Solicitation Clauses protect legitimate interests. Having determined same, the Court may not invalidate the clauses outright and is required to enforce the covenants to the extent reasonable under the circumstances balancing the employer's need to protect its legitimate interest "against the employee's need to earn a living in his chosen field and the public interest." *See Victaulic*, 499 F.3d at 238; *Rafferty*, 923 F.3d at 120. At this stage of the litigation, the Court finds an analysis and determination as to whether and to what extent the Non-Compete Clause and Non-Solicitation Clauses should be limited is premature at this time. *See Victaulic*, 499 F.3d at 238.

Accordingly, Negron's Motion to Dismiss Count Two of the Complaint is **DENIED**.

### B.    Tortious Interference (U.S. Shoring)

Pursuant to New Jersey law, "the elements of tortious interference with a contractual relationship claim and tortious interference with prospective economic relations claims are nearly identical." *CrossCountry Mortg.*, 2023 WL 2158930, at \*5. Both claims require a plaintiff to allege: (1) a protectable right; (2) the defendant intentionally and maliciously interfered with said protectable right; (3) the interference caused a loss of said protectable right; and (4) resulting

11

damages. *See id.* at \*3, 5. The "only" distinction between a tortious interference with a contractual relationship claim and a tortious interference with a prospective economic relations claim is the specific protectable right the plaintiff must allege, *i.e.*, "a contract" or "a prospective economic or contractual relationship or reasonable expectation thereof." *Am. Neighborhood Mortg. Acceptance Co. v. CrossCountry Mortg., Inc.*, Civ. A. No. 20-874, 2022 WL 1423090, at \*5 (D.N.J. May 4, 2022) (citing *MacDougall v. Weichert*, 677 A.2d 162, 174 (N.J. 1996)).

Here, U.S. Shoring argues the Complaint fails to allege sufficient facts by which to infer U.S. Shoring intentionally and maliciously interfered with a protected right as required to state either a tortious interference with a contractual relationship claim or a tortious interference with prospective economic relations claim.[5] (*See* ECF No. 26-1 at 8–16.) U.S. Shoring does not argue the Complaint fails to sufficiently plead the elements of loss or damages. (*See generally id.*)

Interference with a protectable right is intentional if the defendant either "desires to bring it about or if he knows that the interference is certain or substantially certain to occur as a result of his action." *Micro Image Techs., Inc. v. Olympus Corp. of the Ams.*, Civ. A. No. 20-18781, 2022 WL 17132156, at \*4 (D.N.J. Nov. 22, 2022) (quoting *Restatement (Second) Torts*, § 766A, cmt. e (Am. L. Inst. 1977)). Interference is malicious if the defendant "intentionally commits a wrong without excuse or justification." *Id.* (quoting *Cox v. Simon*, 651 A.2d 476, 483 (N.J. Super. Ct. App. Div. 1995)); *see also Printing Mart-Morristown v. Sharp Elecs. Corp.*, 563 A.2d 31, 37 (N.J.

---

[5] U.S. Shoring also argues the Complaint fails to demonstrate either a valid contract exists (ECF No. 26-1 at 5–8) or NTS had a protectable right to a prospective economic advantage (ECF No. 26-1 at 14–16). As reviewed in greater depth above, however, the Complaint sufficiently alleges both the existence of a valid contract between NTS and Negron and that NTS has a protectable interest in its customer relationships and goodwill. *See supra* Section III.A; *see also Micro Image Techs., Inc. v. Olympus Corp. of the Ams.*, Civ. A. No. 20-18781, 2022 WL 17132156, at \*5 (D.N.J. Nov. 22, 2022) (holding for purposes of a tortious interference claim a business "has a protectable economic interest in its relationships with its customers, manufacturers, and vendors").

1989) ("For purposes of this tort, [t]he term malice is not used in the literal sense requiring ill will toward [the] plaintiff." (second alteration in original) (internal quotation marks omitted)). The standard is flexible and determined on a case-by-case basis reviewing whether the "loss of business is merely the incident of healthy competition" or a result of "conduct that is fraudulent, dishonest, or illegal[] . . . thereby interfer[ing] with a competitor's economic advantage." *Micro Image Techs.*, 2022 WL 17132156, at \*4 (quoting *Ideal Dairy Farms, Inc. v. Farmland Dairy Farms, Inc.*, 659 A.2d 904, 936 (N.J. Super. Ct. App. Div. 1995)); *see also Harper-Lawrence, Inc. v. United Merchants and Mfrs., Inc.*, 619 A.2d 623, 630 (N.J. Super. Ct. App. Div. 1993) (describing the standard as whether the conduct was "transgressive of generally accepted standards of common morality"). To survive a motion to dismiss a tortious interference claim, "a complaint need only contain factual allegations sufficient to suggest that the defendant knew or should have known of the [protectable right]." *CrossCountry Mortg.*, 2023 WL 2158930, at \*4 (quoting *Bellator Sport Worldwide, LLC v. Zuffa, LLC*, Civ. A. No. 10-4091, 2011 WL 6303359, at \*1 (D.N.J. Dec. 16, 2011)).

"The mere inducement of an employee to move to a competitor is . . . not in and of itself actionable when the employee is terminable at will." *Micro Image Techs.*, 2022 WL 17132156, at \*4. Because an at-will employee is typically able to resign as they please, "[an] alleged interference is generally construed as tortious interference with a prospective economic relationship rather than tortious interference with contract." *Id.* (citing *Nostrame v. Santiago*, 61 A.3d 893 (N.J. 2013)). Regardless, an inducement may be actionable if the defendant "either has an unlawful or improper purpose or uses unlawful or improper means." *Id.* The New Jersey Supreme Court has identified various types of conduct deemed unlawful or improper, including "conduct that amounts to fraud, defamation, deceit, misrepresentation, violence, intimidation, criminal or civil threats, or other

13

violations of the law." *Nat'l Auto Div., LLC v. Collector's All., Inc.*, No. A-3178-14T3, 2017 WL 410241, at *3 (N.J. Super. Ct. App. Div. Jan. 31, 2017) (citing *Nostrame*, 61 A.3d at 903).

Here, the Complaint sufficiently alleges facts from which to infer U.S. Shoring intentionally and maliciously interfered with NTS's customer relationships and goodwill. (*See, e.g.*, ECF No. 1 ¶¶ 1, 3–4, 42, 45–46, 67, 73); *see also Micro Image Techs.*, 2022 WL 17132156, at *5 (holding for purposes of a tortious interference claim, a business "has a protectable economic interest in its relationships with its customers, manufacturers, and vendors"). NTS claims U.S. Shoring induced Negron to violate the Non-Compete Clause and Non-Solicitation Clauses, which extended to and applied beyond the conclusion of his at-will employment. (*See, e.g.*, *id.* at ¶ 46.) NTS also claims U.S. Shoring induced a significant number of NTS employees to resign from NTS and to join U.S. Shoring bringing with them their customer relationships (*see, e.g.*, *id.* ¶ 3), which both the federal and New Jersey courts have previously recognized as an action constituting malice, *see Marina Dist. Dev. Co. LLC v. AC Ocean Walk LLC*, Civ. A. No. 20-15719, 2021 WL 1526552, at *8 (D.N.J. Apr. 19, 2021); *Platinum Mgmt., Inc. v. Dahms*, 666 A.2d 1028, 1044 (N.J. Super. Ct. Law Div. 1995). Furthermore, NTS alleges U.S. Shoring directed the ex-NTS employees to solicit business from "NTS customers while intentionally omitting that they no longer are employed by NTS." (ECF No. 1 ¶¶ 3, 46.) Such conduct, if not fraudulent or illegal, is certainly dishonest and beyond routine and healthy competition. *See Micro Image Techs.*, 2022 WL 17132156, at *4. Therefore, providing NTS with the benefit of all favorable inferences, the Complaint sufficiently alleges U.S. Shoring intentionally and maliciously interfered with NTS's prospective economic relations.

In contrast, the Complaint fails to sufficiently allege facts by which to infer U.S. Shoring intentionally and maliciously interfered with NTS and Negron's contractual relationship. Although

14

the Complaint alleges five ex-NTS employees voluntarily resigned to join U.S. Shoring (*see* ECF No. 1 ¶ 3), NTS only claims Negron violated the restrictive covenants in his employment agreement (*see generally id.*). These allegations would indicate NTS does not include restrictive covenants in all of its employment agreements and the Complaint does not suggest why it would be common knowledge Negron's Agreement contained restrictive covenants if the other employment agreements did not. However, the Complaint does allege as an executive Constantino's employment agreement contained restrictive covenants. (*Id.* ¶ 25.) Furthermore, the Complaint alleges Constantino separated from NTS approximately three months prior to Negron's promotion. (*Id.* ¶¶ 25, 33.) The Complaint does not claim whether prior to the separation the Operations Manager employment agreements typically contained restrictive covenants. (*Id.*) Absent same, the Court cannot infer either Galoppo or Constantino knew or should have known Negron's Agreement contained restrictive covenants. Therefore, even providing NTS with the benefit of all favorable inferences, the Complaint does not allege sufficient facts to show U.S. Shoring intentionally and maliciously interfered with NTS's contractual relationship.

Accordingly, U.S. Shoring's Motion to Dismiss Count One of the Complaint is **GRANTED IN PART** and **DENIED IN PART**, and the tortious interference with a contractual relationship claim is **DISMISSED WITHOUT PREJUDICE**.[6] NTS may file an amended

---

[6] Both U.S. Shoring and Negron argue NTS's request for leave to amend should be denied as futile. (ECF No. 29 at 9–10; ECF No. 30 at 11–12.) The decision to grant leave to amend rests within the sound discretion of the trial court. *Zenith Radio Corp. v. Hazeltine Rsch. Inc.*, 401 U.S. 321, 330 (1970). An amendment is futile if it "is frivolous or advances a claim . . . that is legally insufficient on its face." *Harrison Beverage Co. v. Dribeck Imp., Inc.*, 133 F.R.D. 463, 468 (D.N.J. 1990). To evaluate futility, the Court uses "the same standard of legal sufficiency" as applied to a motion to dismiss under Rule 12(b)(6). *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000). As the Court does not find the tortious interference of a contractual relationship claim to be legally insufficient at this time, an amendment of the Complaint is not clearly futile and "denial of leave to amend is improper." *Id.*

complaint within thirty days of the accompanying Order addressing the deficiencies identified in this Opinion.

## IV.    CONCLUSION

For the reasons set forth above, U.S. Shoring's Motion to Dismiss Count One of the Complaint (ECF No. 26) pursuant to Rule 12(b)(6) is **GRANTED IN PART** and **DENIED IN PART**, and the common law tortious interference with a contractual relationship claim is **DISMISSED WITHOUT PREJUDICE** with leave to amend consistent with the guidance in this Opinion, Negron's Motion to Dismiss Count Two of the Complaint (ECF No. 25) pursuant to Rule 12(b)(6) is **DENIED**, and Negron's Motion to Dismiss the request for equitable relief pursuant to Rule 12(b)(6) is **DENIED AS PROCEDURALLY DEFICIENT**. An appropriate order follows.

**Date: March 25, 2026**                              */s/ Brian R. Martinotti*
                                                       **HON. BRIAN R. MARTINOTTI**
                                                       **UNITED STATES DISTRICT JUDGE**

16